UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No._____

UNITED STATES OF AMERICA

vs.

**JORGE NOBREGA,**

       Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? \_\_\_ Yes _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? \_\_\_ Yes _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? \_\_\_ Yes _X_ No

                              Respectfully submitted,

                              ARIANA FAJARDO ORSHAN
                              UNITED STATES ATTORNEY

BY: _____
                              Kurt K. Lunkenheimer
                              ASSISTANT UNITED STATES ATTORNEY
                              Court ID No. A5501535
                              99 N.E. 4th Street
                              Miami, Florida 33132-2111
                              TEL (305) 961-9008
                              FAX (305) 536-7213
                              Kurt.Lunkenheimer@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JORGE NOBREGA,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:21mj03590 Becerra<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 2019 to May 2021__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 1705 | Conspiracy to Violate IEEPA |
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering |
| 18 U.S.C. § 1956(a)(2)(A) | Money Laundering |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Michael Simpson, HSI
*Printed name and title*

Attested to in accordance with the requirements of
Federal Rule of Criminal Procedure 4.1 by __Telephone__

Date: __08/16/2021__

_____
*Judge's signature*

City and state: __Miami, FL__      Hon. Jacqueline Becerra, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Michael Simpson being first duly sworn hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with Homeland Security Investigations ("HSI") and have been since 2004. I am assigned to HSI's Financial Strikeforce Unit and am responsible for conducting and assisting in investigations relating to money laundering and other federal crimes.

2. The information contained in this affidavit is based on, among other things, my participation in the investigation described herein, my review of relevant documents and emails, information from law enforcement officers and others, and knowledge gained from my personal training and experience. Because I submit this affidavit for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation.

3. This affidavit is submitted in support of a criminal complaint and arrest warrant for Jorge NOBREGA. Based on the facts as set forth in this affidavit, I submit that there is probable cause to believe that Jorge NOBREGA has committed violations of: one (1), conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and Executive Orders involving Venezuela Sanctions, in violation of 50 U.S.C. § 1705; two (2), willfully conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); and three (3), committing money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A).

## STATUTORY AUTHORITY

### The International Emergency Economic Powers Act and the Venezuelan Transactions and Sanctions Regulations

4. Under the IEEPA, 50 U.S.C. §§ 1701-1707, the President of the United States is granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States. 50 U.S.C. § 1701(a). Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law. Among other things, IEEPA empowers the President to issue regulations governing exports from the United States.

5. Under IEEPA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the statute. 50 U.S.C. § 1705(a). Willful violations of the Venezuela Sanctions Regulations, 31 CFR part 591, constitute criminal offenses under IEEPA and carry a 20-year maximum term of imprisonment and up to a $1,000,000 fine. 50 U.S.C. § 1705(c).

6. On March 8, 2015, the President issued Executive Order 13692, which declared that the situation in Venezuela, including certain actions and policies of the Government of Venezuela, constituted an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and declared a national emergency under IEEPA to deal with that threat. 80 Fed. Reg. 12747 (March 8, 2015). In multiple subsequent Executive Orders in 2017, 2018, and 2019, the President continued and amplified the original declaration of a national emergency. *See* Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017); Exec. Order No. 13827 83 Fed. Reg. 12469 (March 19, 2018); Exec. Order No. 13835, 83 Fed. Reg. 24001 (May 21, 2018); Exec. Order No. 13850, 83 Fed. Reg. 55243 (November 1, 2018); Exec. Order No. 13857, 84 Fed. Reg. 509 (January 25, 2019); and Exec. Order No. 13884, 84 Fed. Reg. 38843

(August 5, 2019). Since 2019, the President has continued the national emergency with respect to Venezuela and the prior Executive Orders. Among other things, these EOs block the property and interests in property of the Government of Venezuela as well as that of certain individuals designated by the Secretary of the Treasury. Collectively, individuals and companies that have been designated and whose assets have been blocked are called "Specially Designated Nationals" or "SDNs."

7. To implement the national emergency with respect to Venezuela, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Venezuela Sanctions Regulations ("VSR"). *See* 31 CFR part 591. The VSR generally prohibit transactions involving any property or interest in property blocked pursuant to Executive Order 13,692 or any of its successor Executive Orders, unless OFAC has granted a license under the VSR. *See* 31 C.F.R. §§ 591.101, 591.201-591.202. These provisions of the VSR were in effect at all times relevant to this affidavit.

**Money Laundering**

8. Title 18, United States Code, Section 1956(a)(2)(A), criminalizes transporting, transmitting, or transferring, or attempting to transport, transmit, or transfer a monetary instrument or funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity. That same provision criminalizes a conspiracy to violate Section 1956. 18 U.S.C. § 1956(h). The term "specified unlawful activity," with respect to a financial transaction occurring in whole or in part in the United States, includes conspiring to violate, or causing a violation of any order, license, regulation, or prohibition issued pursuant to the statute under IEEPA, 50 U.S.C. § 1705(a). 18 U.S.C. § 1956(c)(7)(B)(v).

3

## KEY PLAYERS & ENTITIES

9. ACHABAL TECHNOLOGIES, INC. ("ACHABAL") is located at 4769 NW 72nd Ave, Miami, Florida, and is an active Florida Profit Corporation (EIN 59-3105221).

10. Jorge NOBREGA is a U.S. citizen and the Chief Executive Officer of ACHABAL, as reported in company registry records held by the State of Florida.

11. ACHABAL TECNOLOGIA S.A. is the Venezuelan branch of ACHABAL TECHNOLGIES, INC. and is also controlled by Jorge NOBREGA, as evidenced by various contracts, commercial invoices, and documents.

12. PETRÓLEOS DE VENEZUELA, S.A. ("PDVSA") is the Venezuelan state-owned oil company. A prior Venezuelan congressional report accused PDVSA of massive corruption with at least $10 billion pilfered over the last decade.[1] The United States has indicted several executives of PDVSA subsidiaries for corruption and bribery.[2]

13. BARIVEN, S.A. (Venezuela) operates as a subsidiary of PDVSA. It acquires equipment and machinery used in the oil exploration and extraction processes of PDVSA.

14. TIPCO ASPHALT PUBLIC COMPANY ("TIPCO" a/k/a "TASCO") is a Thai company that manufactures and distributes asphalt products in the Asia Pacific region and has an asphalt refinery in Malaysia. There are numerous articles available online reporting on linkages between TIPCO and Venezuelan oil suppliers.[3] Recent reporting details how TIPCO acted as a payment intermediary, or third-party money launderer, and collaborated with

---

[1] Alexandra Ulmer, *Venezuela Congressional probe says $11 billion missing at PDVSA*, REUTERS (Oct. 19, 2016), http://www.reuters.com/article/us-venezuela-pdvsa/venezuela-congressional-probe-says-11-billion-missing-at-pdvsa-idUSKCN12J22H (last visited June 1, 2021).
[2] *See, e.g., United States v. Roberto Enrique Rincon-Fernandez, et al.*, 15-CR-654 (S.D. Tex.).
[3] Marianna Parraga and Luc Cohen, *Exclusive: Venezuela reshuffles oil output to favor Asia exports amid sanctions – documents*, REUTERS (June 28, 2019), https://www.reuters.com/article/us-venezuela-oil-exclusive/exclusive-venezuela-reshuffles-oil-output-to-favor-asia-exports-amid-sanctions-documents-idUSKCN1TT29O (last visited June 1, 2021).

PDVSA to facilitate hundreds of millions of dollars of transfers on behalf of the Venezuelan government.[4] This allowed the Venezuelan government to pay obligations, debts, contractors, and services through a sanctions-evasion mechanism. As detailed below, TIPCO assisted ACHABAL with evading sanctions laws by serving as an intermediary for multiple transactions.

15. LIQUIP is an Australian-based company specializing in fuel handling. LIQUIP supplies equipment for storing and transferring bulk liquids such as petroleum and dry bulk. Examples of such equipment are loading arms, ground monitors, meters, and pumping systems.

## BACKGROUND

16. In April of 2019, pursuant to a tip from a confidential informant ("CI"), HSI began investigating NOBREGA for his participation in servicing the Venezuelan Military's fleet of Russian Sukhoi, SU-30 combat aircraft. According to information provided by the CI, NOBREGA was contracted to service the fleet of aircrafts by injecting a polyurethane explosion suppressant foam ("ESF") into the fuel tanks to replace the old, disintegrated foam. Because the fuel tanks are located in the wings of the SU-30 combat aircraft, NOBREGA's repair technique alleviates the need to remove the aircraft wings and thus allows for cheaper and more expeditious repair on site. Otherwise, the wings would need to be removed and sent to Russia in order to reline the fuel tanks. The ESF prevents the fuel tanks from igniting or exploding in the event they are compromised by enemy fire or otherwise punctured. Further, the ESF affects the handling of the combat aircraft by

---

[4] Joshua Goodman, *To dodge sanctions Venezuela turns to Asia asphalt giant*, ASSOCIATED PRESS (Oct., 8, 2020) https://apnews.com/article/miami-asia-financial-markets-thailand-venezuela-33d7090b7a6b28cce840565b55da4785 (last visited June 1, 2021).

enhancing the baffling of the fuel. NOBREGA has received money transfers from third parties as payment for these services to the Venezuelan Military.

17. Because the SU-30 combat aircraft are listed in the USML Category VIII(a)(2), a license is required to furnish the servicing of the aircraft. Neither NOBREGA nor his companies ever applied for, or received, or possessed a license or other written approval from the DDTC to export services to the Venezuelan military.

18. During the investigation, the CI made and received recorded calls to and from NOBREGA. In those calls, they discussed such topics as NOBREGA's progress with the ESF servicing of the SU-30 combat aircraft, financial payments, bank compliance matters, NOBREGA's interactions with Venezuelan government and military officials, and the political situation in Venezuela. Further, throughout the investigation, the CI engaged in the regular exchange of instant messages with NOBREGA over WhatsApp, a freeware, cross-platform messaging and voice-over internet protocol service utilized through an app downloaded onto a mobile smart phone. The CI also engaged in email correspondence with NOBREGA. At times, while exchanging emails with the CI, NOBREGA made additional, associated comments via WhatsApp messages and calls to the CI about the timing of future payments and the submission and creation of supporting documents for bank compliance purposes.

## PROBABLE CAUSE

19. Beginning in approximately August of 2018, NOBREGA and the CI began discussing NOBREGA's need to hide the origin of payments that NOBREGA planned to receive from the Venezuelan government for maintenance services of Venezuelan military's aircraft fleet. Around this time, NOBREGA opened a company bank account in Portugal using ACHABAL

6

("ACHABAL's Portugal bank account").  NOBREGA ultimately used this account to receive multiple payments for his services to Venezuela.

20. The CI provided law enforcement with a copy of an email chain starting on November 22, 2018, between NOBREGA and a bank employee at his Portuguese bank. NOBREGA states that he received a request from PDVSA for bank details regarding his account in order to make payments to him.[5]

21. The CI provided another email, dated February 28, 2019, sent from NOBREGA to his Portuguese bank, where NOBREGA states that he is expecting a wire payment from a company called TIPCO in Malaysia.[6]

22. On March 21, 2019, a representative from a U.S. company that sold ESF contacted a representative from Achabal Technologies asking for information from the Achabal Technologies representative before the U.S. company could provide a quote for the purchase of ESF. The requested information consisted of: 1) application; 2) military or civil aircraft; 3) model of the aircraft; and 4) end user.

23. Also on March 21, 2019, the representative from Achabal Technologies responded to the U.S. company representative's email stating that "[t]he application is for a diesel and kerosene storage tank," "non-military commercial use," and "[e]nd user Chevron."

24. The CI met with and communicated with NOBREGA where the two frequently discussed how NOBREGA was in regular contact with members of the Venezuelan military regarding the servicing of the SU-30 combat aircrafts. One such gathering occurred on or about

---

[5] At this time, PDVSA was not sanctioned by OFAC. However, on January 28, 2019, OFAC designated PDVSA pursuant to Executive Order (E.O.) 13850. From that point forward, NOBREGA minimized and then hid the involvement of PDVSA in the payments from his Portuguese bank. NOBREGA discusses this minimization in recorded phone calls with the CI where he mentions using BARIVEN in lieu of PDVSA and omitting PDVSA references from future correspondence with the bank.
[6] TIPCO is headquartered in Thailand but has a refinery in Malaysia, which may be why NOBREGA says Malaysia.

7

April 26, 2019, during a recorded meeting between NOBREGA and the CI. In that meeting, NOBREGA told the CI that "Padrino Lopez[7]" came to meet with him in Venezuela. NOBREGA also stated that Padrino Lopez was accompanied by a commander of the Air Force, Julian or Juliac (no last name stated).[8] NOBREGA described to the CI the process of replacing the old foam in the SU-30 combat aircraft fuel tanks with new ESF and likened it to "dialysis." NOBREGA also discussed security measures at the job site, his ability to conduct the repair in Venezuela instead of having to send the aircraft wings to Russia, NOBREGA's verbal commitment to conduct the repairs, and a debt owed to him by PDVSA.

25. The CI and NOBREGA also discussed payments from the Venezuelan Government for the servicing of at least five (out of the contracted total of twenty-three) SU-30 combat aircraft. The CI provided law enforcement with documentation from two March 2019 wire transfers received by NOBREGA in ACHABAL's Portugal bank account for the aircraft ESF servicing, which state that the funds were for payment of a tanker of "Boscán crude oil."[9]

26. In connection with the two March 2019 wire transfer payments, the CI also provided law enforcement with three associated documents obtained from NOBREGA: (1) a wire transfer order; (2) invoice #0352169; and (3) purchase order #5100112863.

   a. The wire transfer order reveals a payment from TIPCO to ACHABAL by means of two single customer credit transfers, on March 4, 2019, totaling €2,474,269.53.

---

[7] The CI knew and understood NOBREGA was referring to Venezuela's Minister of Defense or Minister of Popular Power, Vladimir Padrino Lopez.
[8] Based on my training and experience, I assess that the person identified as "Julian" may be Major General (M/G) Pedro Juliac LARTIGUEZ, General Commander of the Bolivarian Military Aviation based on documents (ref. OFERTA COMERCIAL POLIURETANO AVIACION MILITAR BOLIVARIANA dated 1/02/19 or 02/01/19) which I found from the execution of email search warrants as is discussed in paragraphs 36 and 40.
[9] The Boscán Oil Field is located 40 kilometers southwest of Maracaibo, Venezuela. PDVSA is the majority owner of the region.

8

  b. The invoice, #0352169, is written on ACHABAL letterhead and dated August 14, 2015. It reflects the sale of five items from ACHABAL to BARIVEN. S.A. c/o PDVSA SERVICES, INC., valued at a total of $2,794,440. In the line item description, it states "LIQUIP."

  c. The purchase order, #5100112863, is written on PDVSA letterhead, dated February 25, 2014, and lists the same LIQUIP goods described on the ACHABAL invoice. Additionally, this purchase order reflects the sale from ACHABAL to BARIVEN, S.A. c/o PDVSA Services, Inc., for a price of $2,794,440.00.

  27. From March 4, 2019, through July 31, 2019, € 2,474,269.53 was transferred into ACHABAL's Portugal bank account from Tipco Asphalt Public Co. Ltd. During that same time period, €1,156,897 was transferred from ACHABAL's Portugal bank account to an ACHABAL U.S. bank account ("ACHABAL's U.S. bank account") in the Southern District of Florida. In addition, direct payments to American Express were made from ACHABAL's Portuguese bank account in the amount of €240,511.

  28. On or about August 26, 2019, during a recorded conversation, NOBREGA and the CI discuss NOBREGA's need to transfer money from ACHABAL's Portugal bank account to ACHABAL's U.S. bank account in the Southern District of Florida in order to pay expenses.

  29. On or about February 10, 2020, during a recorded conversation, NOBREGA and the CI discuss the importance of making sure there is no mention of PDVSA in any future paperwork shared with the Portuguese bank as support for the wire transactions even though PDVSA would continue to be involved in payment to NOBREGA for servicing Venezuela's SU-30 combat aircrafts. Further, NOBREGA states that any reference to PDVSA or BARIVEN, S.A. were removed.

30. At the beginning of 2020, an undercover officer from HSI (the "UC") was introduced and inserted to assist the investigation. On February 23, 2020, NOBREGA flew into the United States from Venezuela for a nine-day visit, departing on March 2, 2020. On February 27, 2020, the UC met with NOBREGA at NOBREGA's warehouse in Miami, Florida. During the recorded encounter, NOBREGA spoke freely about the ESF "dialysis" procedure he used to upgrade the fuel tanks of the Venezuelan Air Force's fleet of SU-30 combat aircraft. NOBREGA told the UC that ACHABAL would be willing to conduct repair services for other foreign militaries if the UC could arrange that.[10] Further, NOBREGA stated that he could train the foreign officials on the ESF procedure. NOBREGA said that he would charge a price of $900,000 per aircraft.

31. During a recorded call on or about February 27, 2020, NOBREGA discussed with the CI the challenge of receiving payment given leadership changes underway at PDVSA.[11]

32. In March 2020, the CI provided to law enforcement another set of documents related to a second wire transaction that NOBREGA received from the Venezuelan Government. As with the 2019 payments, TIPCO in Thailand served as the intermediary for the transaction. Specifically, the CI provided the following four documents obtained from NOBREGA:

   a. The first document, invoice #0352182, is written on ACHABAL letterhead and dated December 19, 2016. This invoice reflects the sale of a LIQUIP-branded "PARKING ADAPTOR" from ACHABAL to TIPCO. The price cited is $41,712.00.

---

[10] NOBREGA had previously spoken about this topic with the CI during a recorded call on or about October 15, 2019, when NOBREGA mentioned Indonesia, specifically.
[11] On February 14, 2020, Venezuelan President Nicolas Maduro declared an "energy emergency" and announced the creation a presidential commission to restructure the country's oil industry. Maduro named Vice President for the Economy Tareck El Aissami to lead the commission.

10

  b. The second document, invoice #0352183, is written on ACHABAL letterhead and dated February 6, 2017. This invoice reflects the sale of a LIQUIP-branded "DISPENSER" from ACHABAL to TIPCO. The price cited is $790,000.00.

  c. The third document, invoice #1500000627-02, is dated March 4, 2020, and is written on PDVSA letterhead. The invoice is addressed to TIPCO and contains wire transfer payment instructions for beneficiary ACHABAL, account #45541292033, housed with ACHABAL's Portugal bank. The amount cited is €764,792.64 for "Boscan Crude Oil" exported from PDVSA to Kemaman Port, Malaysia.

  d. Lastly, the CI provided a document reflecting a single customer credit transfer on March 5, 2020, totaling €764,792.64. The transfer originated from TIPCO to beneficiary customer ACHABAL's account, #45541292033, housed with ACHABAL's Portugal bank. From various conversations between NOBREGA and the CI, it was clear to the CI that this payment is for NOBREGA's servicing of the combat aircraft and the supporting documents for the credit transfer are intended to hide this fact. Law enforcement is unaware whether these supporting documents reflect actual business dealings and are being reused by NOBREGA to provide justification for the wire transfers, or whether they were completely fabricated.

33. On March 9, 2020, NOBREGA sent an email to the CI sharing a one-page document that NOBREGA received from LIQUIP. NOBREGA asked the CI if it would be prudent to send the attached document to the Portuguese bank employee to support and justify the March 5, 2020, wire transfer NOBREGA received from TIPCO as described in paragraph 32(d). In the email, NOBREGA states that the document was from the prior year. The document, reproduced below, is written on LIQUIP letterhead and dated February 28, 2019.

> LIQUIP is committed to compliance with all applicable export control and economic sanctions laws and regulations and asks for the same commitment from all its business partners, including distributors and resellers of LIQUIP products.
>
> In light of additional sanctions that have been imposed with respect to Venezuela, and specifically with respect to Petroleos de Venezuela, S.A. (PDVSA) and its subsidiaries, we ask that you acknowledge these sanctions and certify your company's commitment to comply with applicable restrictions by executing the attached certification and sending the signed copy to LIQUIP.
>
> LIQUIP reserves the right to refuse to conduct business with companies that do not return the attached certification.

Venezuela Sanctions Compliance Certification

> ACHABAL TECHNOLOGIES hereby acknowledges that PDVSA has been designated as a Specially Designated National (SDN) by the U.S. Office of Foreign Assets Control and due to this designation U.S. person [sic] are prohibited from engaging in transactions with PDVSA absent a general or specific license from OFAC authorizing the activity.
>
> ACHABAL TECHNOLOGIES further acknowledges that all subsidiaries 50% or more owned or controlled by PDVSA, including but not limited to ALBA de Nicaragua (ALBANISA), Nynas, AB, CITGO Holdings, Inc. and PDV Holdings, Inc. ( collectively "PDVSA owned entities") are also subject to these sanctions and require a general or specific license from OFAC authorizing transactions with these entities.
>
> ACHABAL TECHNOLOGIES certifies that it will not sell or otherwise transfer LIQUIP products to PDVSA or PDVSA owned entities, service or support LIQUIP products for PDVSA or PDVSA owned entities, or otherwise engage in transactions involving LIQUIP products and services and relating to PDVSA or PDVSA owned entities, unless there is an applicable OFAC General License authorizing the transaction or a specific OFAC license is obtained to authorize the transaction.
>
> ACHABAL TECHNOLOGIES acknowledges that LIQUIP will not provide any goods or services to ACHABAL TECHNOLOGIES if in LIQUIP sole discretion LIQUIP determines it may not do so in compliance with applicable U.S. sanctions and export control laws and regulations.

34. Also on March 9, 2020, the CI provided another email that he that had received from NOBREGA with an attached, one-page, statement of sanctions compliance. The document, reproduced below, is written on ACHABAL letterhead and dated March 9, 2020.

> March 09, 2020
> To: [Portuguese bank employee's name]
> [Portuguese bank] BCP
> Cascais-Portugal
>
> Venezuela sanctions Compliance Certification
>
> Due to the sanctions that have been imposed on Venezuela specifically with respect to Petroleos de Venezuela, S.A. and its subsidiaries, Achabal Technologies, Inc Certifies that:
>
> Our company acknowledges that PDVSA has been designated as a Specially Designated National (SDN) by the U.S. Office of Foreign Assets Control and due to this designation U.S. persons are prohibited from engaging in transactions with PDVSA absent a general or specific license from OFAC authorizing the activity.
>
> Our company acknowledges that all subsidiaries 50% or more owned or controlled by PDVSA, included but no limited to ALBA de Nicaragua (ALBANISA), Nynas, AB, CITGO Holdings, Inc and PDV Holdings are also subject to these sanctions and require a general or specific license from OFAC authorizing transactions with this entities.
>
> ACHABAL TECHNOLOGIES, INC Certifies that it will Not sell products, services or support for PDVSA or PDVSA owned entities, unless there is an applicable OFAC General License Authorizing the transaction or a specific OFAC License is obtained to authorize the transaction.
>
> ACHABAL TECHNOLOGIES, INC will comply with applicable U.S. sanctions and export control laws and regulations.

35. On or about May 15, 2020, I received confirmation from the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) that a search for records naming Jorge L. NORBREGA and/or ACHABAL TECHNOLOGIES INC. showed no responsive records of applications submitted by or on behalf of, and no OFAC licenses issued to, any of the aforementioned parties.

36. On June 24, 2020, Southern District of Florida, United States Magistrate Judge, the Honorable Jonathan M. Goodman authorized an email search warrant for an email account associated with NOBREGA: achabal.tecnologia@gmail.com. After production by Google, and

13

upon review, I saw that there were several other email addresses with which the account was communicating regarding the servicing of the Sukhoi combat aircraft. Further, attached to some of the emails, there were contracts, invoices, and technical specifications concerning the servicing of the same. Several of the documents name specific Venezuelan military officials, some of whom are described in more detail in the following paragraphs.

37. Attached to one email sent on or about February 22, 2019, to achabal.technologia@gmail.com, is a 20-page contract, written in Spanish, in which ACHABAL is named as the contractor in a service agreement with the Venezuelan state. Admiral Clemente Antonio Diaz, Defense Vice Minister of Services, Personnel, and Logistics, Lieutenant Colonel Juan Carlos Alvarez, Project Boss, and General Vladimir Padrino Lopez, Defense Minister of Popular Power are named in the contract as representing the Venezuelan state. The contract states that ACHABAL will provide cleaning services of the fuel system and polyurethane replacement of 5 Sukhoi 30 MK2 aircraft ("servicios de limpieza del sistema de combustible y cambio de poliuretano a cinco (05) aviones Sukhoi 30 MK2"). Moreover, the contract stipulates that ACHABAL is to be paid €1,152,795.71 through the National Development Fund ("Fondo de Desarrollo Nacional-(FONDEN)").

38. Additionally, among the attachments found in the email account, there are two Commercial Offers ("Ofertas Comercial") on ACHABAL letterhead. One, dated January 2, 2019, is addressed to Venezuelan Major General Pedro Juliac LARTIGUEZ and quotes a price for the fuel system cleaning and polyurethane change of five SU-30 aircraft. The other, dated February 1, 2019, is addressed to Venezuelan Major General Ivan Hidalgo Teran and quotes a price for accessories and tools needed to change the polyurethane in the tanks of twenty-three SU-30

14

aircraft. Both Commercial Offers mention that the pricing includes the training of the clients' specialists in how the repairs are conducted.

39. On or about July 1, 2019, there was an email sent from achabal.technologia@gmail.com with the subject "Fwd: ESPECIFICACIONES G-15M Polyurethane Foam" and an attachment called "G-15M SPECIFICATIONS.pdf." The attached document is written on ACHABAL TECNOLOGIA, S.A. letterhead that contains detailed, technical specifications of charcoal-colored, G-15M grade, reticulated polyether polyurethane foam, which law enforcement believes is the foam used in the ESF procedure.[12]

40. On August 6, 2020, Southern District of Florida, United States Magistrate Judge, the Honorable Edwin G. Torres authorized an email search warrant for a second email account associated with NOBREGA: jnobrega16@outlook.com. After production by Microsoft, and upon review, I saw that again there were several other email addresses with which the account was communicating regarding the servicing of the SU-30 combat aircraft. As with the achabal.tecnologia@gmail.com email account, attached to some of the emails were documents, invoices, and technical specifications concerning the SU-30 servicing and financial arrangements. Further, several of the documents name specific Venezuelan military officials. In the following paragraphs I describe some of the documents in more details.

41. First, a letter dated April 4, 2020, from BARIVEN, S.A. to TIPCO stating that according to their "financial agreement," overdue invoices of ACHABAL will be "recognized and payed" by TIPCO. Further, the agreement states that TIPCO will issue new purchase orders for each debt to ACHABAL (the supplier) for pending payments, and that ACHABAL will issue new

---

[12] I am aware that NOBREGA/ACHABAL previously purchased charcoal colored, G-15M grade, reticulated polyether polyurethane foam from a U.S. vendor as corroborated by records obtained from the vendor and an analysis of ACHABAL bank records.

invoices to TIPCO for pending payments. Included on the document is a list of outstanding invoices. The second document is a PDVSA vendor information form (VIF) completed by ACHABAL. The third document is a two-page PowerPoint presentation proposal addressed to the Venezuelan Ministry of Popular Power for Defense ("Ministerio del Poder Popular Para la Defensa") explaining the intent of ACHABAL to conduct maintenance work on the SU-30 aircraft but citing outstanding debt and delayed payments from PDVSA. The presentation refers to ACHABAL as a provider of strategic components, especially for the Venezuelan Defense Sector. The fourth document is an informational report sent from one Venezuelan Air Force officer to a second, discussing the need for the SU-30 ESF repair and the role of ACHABAL.

42. On October 2, 2020, I received confirmation from the U.S. Department of State, DDTC, that NOBREGA's activities with respect to the servicing of the SU-30 combat aircraft constitute "defense services" as delineated in the ITAR. As previously confirmed with DDTC on or about July 8, 2020, pursuant to a requested registration and license history check for Jorge NOBREGA, ACHABAL TECHNOLOGIES, and ACHABAL TECNOLOGIA, no record was found of a registration application by, any application for an export license by, any export license granted to, or any other written approval granted to an individual or entity so identified with respect to the exportation of defense articles or defense services, brokering, or any other regulated activities regarding the temporary import, export, or transfer of any defense articles or defense services.

43. On July 15, 2021, the UC met with NOBREGA at NOBREGA's office/warehouse. The UC and NOBREGA discussed two future, hypothetical deals that would involve NOBREGA selling his combat aircraft ESF replacement services to foreign contacts in Malaysia and the People's Republic of China ("PRC"). When discussing how or if a license would be sought and

obtained from the U.S. Department of State, NOBREGA stated that he has never done that. He described it as a procedure and stated that it takes time. He mentioned a previous interaction with the U.S. Department of State, but provided no additional context to the UC. Asked what he did with respect to his prior work in Venezuela concerning the aircraft, NOBREGA said there were no sanctions so he did not have to worry about anything. NOBREGA stated that he had worked on thirteen (13) aircrafts and implied he was contractually obligated to service more, but he did not want to go to jail. For the future business with Malaysia and the PRC, NOBREGA said he has a lawyer who does licensing for the U.S. Department of State and declared that he would get in touch with the attorney to further discuss the topic. The UC asked NOBREGA if the export license was needed because of the export of the ESF and NOBREGA corrected the UC that it was because the ESF is to be used in a military application which requires a license. NOBREGA also stated that he is owed money for his Venezuela work and explained that he was previously paid twice, in U.S. Dollars.

44. On or about July 23, 2021, the CI and NOBREGA had a phone call where NOBREGA told the CI about his meeting with the UC. NOBREGA told the CI that he is having trouble with his ESF supplier and their questioning of him regarding the end use and destination of the ESF and whether he had an export license for the ESF. NOBREGA makes statements to the CI that for future deals with the UC a license from the U.S. Department of State would be needed.

## CONCLUSION

45. Based on the foregoing, I submit that there is probable cause to believe that NOBREGA conspired with Venezuelan officials to provide defense services to the Venezuelan Air Force in the form of repairs to the SU-30 combat aircraft without obtaining a license. In

exchange, he received payment from the Venezuelan state via a third-party money-laundering structure involving TIPCO of Thailand, PDVSA, and BARIVEN, S.A. NOBREGA's actions violated both the IEEPA and the AECA, and NOBREGA engaged in further criminal conduct by conspiring to launder and laundering the proceeds of the criminal scheme through Europe before it arrived in the United States in order to further his criminal enterprise. Therefore, I submit that there is probable cause that NOBREGA committed violations of: one (1), conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and Executive Orders involving Venezuela Sanctions, in violation of 50 U.S.C. § 1705; two (2), willfully conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); and three (3), committing money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Respectfully submitted,

Michael Simpson
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone, this __16__ of August 2021.

HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA